# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ERIC J. THOMPSON,**
        **Petitioner,**

**v.**                                        **Case No.  4:06cv110/MP/MD**

**JAMES R. MCDONOUGH,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 16).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY[1]

On May 7, 2000 Kelly Harper was murdered during a robbery.  One of the participants, Atikum Wondaferow, testified pursuant to a plea agreement with the state.  The agreement provided that he would testify truthfully in four trials, and the state would then decide what to do about his involvement.  His testimony formed the backbone of the state's case (doc. 14, ex. C, pp. 218-266)[2], and is summarized here.

Participants in the robbery and murder were the petitioner, along with Wondaferow, Ivan Campbell, Reginald Kitchen, and Brian Williams.  That morning Wondaferow and Campbell were sitting on the front porch trying to figure out how to get some marijuana.  They thought of Kelly Harper, who dealt in drugs, and Campbell called him.  Harper said he would come over in an hour.  At about that time petitioner drove up, with Williams and Kitchen in the car with him.  Williams said he wanted a half pound of marijuana also, so Campbell called Harper again.  Petitioner, Williams and Kitchen came up to the porch, and petitioner asked where the weed was.  He also showed Wondaferow a .38 revolver, saying it belonged to Williams.  There was then some discussion about how Kitchen had been involved in ripping off a drug dealer.  Kitchen pulled out a 9 mm pistol that he said belonged to Williams.  Campbell then reported that he had talked to Harper, and that Harper would bring a half pound for Williams.

Campbell blurted out that Harper was a sucker and that they could rob him.  Petitioner chimed in, agreeing.  Williams agreed.  Wondaferow said that if they robbed Harper they should rob him (Wondaferow) also, so it didn't come back on him.  Since they had no ammunition for their weapons all the men but Campbell, with petitioner driving, went to a pawn shop in Tallahassee.  Wondaferow and Williams

---

[1] The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

[2] Hereafter all references to exhibits will be to those provided at doc. 14 unless otherwise noted.

went in and Wondaferow bought the ammunition.  Upon returning to Wondaferow's house, the men discussed robbing Harper again.  Wondaferow said to let him get his marijuana first.

When Harper arrived Wondaferow asked to do his deal first, but Harper said he wanted to do the larger deal first.  Petitioner, who had gone out the back door and come around to the front of the house, then came up cursing and struck Wondaferow, knocking him down.  Petitioner then pulled the .38, pointed it at Wondaferow, said "give me the sh[--]," and took Wondaferow's money.  There was a scuffle, and Harper was shot in the neck.  Petitioner fled the scene.  Campbell went through Harper's pockets and then he, Williams and Kitchen fled.

Petitioner was charged with one count of robbery with a firearm and one count of first degree murder.  A jury found him guilty, and he was sentenced to two concurrent life terms.  The appellate court affirmed petitioner's convictions and sentences without written opinion (exs. J, K).  Petitioner filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (ex. O, pp. 1-53), to which he attached an undated, unsworn written statement by Ivan Campbell in which he said "As far as Eric Thomas [sic[ is concerned, I have no knowledge of him being in that house on the day in question, other than to smoke some marijuana with Aticum Wondaferow (*id.*, pp. 55-58).  The trial court denied the motion without a hearing (*id.*, pp. 71-109).  Petitioner's appeal of the order denying relief was unsuccessful, and he now seeks federal habeas relief.  Respondent concedes that the petition is timely (doc. 13, pp. 4-5).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication

on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v.*

*Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

### PETITIONER'S GROUNDS FOR RELIEF

1. & 2.        <u>Insufficient evidence of armed robbery and felony murder.</u>

Petitioner's first two grounds for relief involve claims of insufficient evidence to support his convictions.  Respondent points out in his answer that petitioner's insufficient evidence claims are not grounded in federal constitutional law and therefore, are not cognizable on federal habeas.  Even if the claims are construed to raise federal claims, they are procedurally defaulted because although petitioner challenged the sufficiency of the evidence in his direct appeal, his appellate argument did not raise any claims of federal constitutional error, and even if it had, the claims were procedurally barred from review on direct appeal because petitioner's counsel failed to move for a judgment of acquittal in order to preserve

the issue as required by Florida law.

In his reply petitioner acknowledges that respondent is correct, stating as follows:

> As argued by the State, Petitioner acknowledges the failure of his appellate counsel on direct appeal to allege the "federal constitutional error" implicated in the insufficiency of evidence upon which he was convicted. . . .
>
> While Petitioner maintains his argument that there was insufficient evidence to support his conviction, he concedes his failure to properly exhaust such claim in the context of a federal constitutional error. Accordingly, he recognizes such claim is not cognizable in federal habeas proceedings. Additionally, Petitioner acknowledges, as the State argues, that the claims were not adequately preserved due to the failure of Petitioner's trial counsel to either appropriately object at trial or motion the trial court.

(Doc. 16, p. 2).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v.*

*Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

In the instant case, petitioner concedes that his first two claims are procedurally defaulted.  He has made none of the requisite showings to excuse his default; therefore, the claims will not be considered further.

   3.   <u>Ineffective assistance of counsel - failure to have Ivan Campbell testify.</u>

For his third ground for relief petitioner contends that he was denied his constitutionally guaranteed right to the effective assistance of counsel.  Petitioner bases this ground on the written statement, described earlier, in which Ivan Campbell purportedly exonerated petitioner from involvement in the crime. Petitioner faults trial counsel for failing to call Campbell as a defense witness.  This

claim was presented to the trial court in petitioner's motion for post-conviction relief. The court denied the claim without a hearing.[4]

### A.  Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689,

---

[4]First petitioner says that his due process rights were violated when the Rule 3.850 court did not provide him an evidentiary hearing.  Respondent says that petitioner did not present this issue to the state court when he appealed the denial of his motion for post-conviction relief, and it is therefore procedurally barred.  Notwithstanding any procedural bar, the issue will not be considered because it provides no basis for federal habeas relief. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding that § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").

104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

B.  Federal Review of State Court Decision

The Rule 3.850 court found that at the time of petitioner's trial, Ivan Campbell was awaiting trial on the same charges and would not have been available to testify at petitioner's trial.  In this regard the court noted, relying upon its own records, that

Campbell subsequently exercised his right against self-incrimination during Brian Williams' trial.  Additionally, the court found that Campbell's undated, unsworn statement was inconsistent with two statements he had made earlier, and that, even if Campbell had testified consistent with the written statement, it would not likely have affected the result because Campbell would have been effectively impeached with his prior inconsistent statements.  Therefore, the court held that petitioner had not sustained his burden under *Strickland* (ex. O, pp. 2-3).

   In reviewing the state court's decision it will be helpful to set out the content of various statements by Campbell, and the order in which he gave them, in relation to petitioner's trial as well as Williams' trial:

| | |
|---|---|
| May 7, 2000 | Murder and robbery of Mr. Harper |
| May 10, 2000 | Campbell gives statement to law enforcement containing the following allegations (all from ex. W): Kitchen brought guns to the house (p. 18); petitioner drove in his car with the others to get bullets (p. 18-19); Kitchen's job was to guard the back; Williams job was to point a gun at Harper from inside the house; petitioner's job was to point a gun at Harper from outside the house; Campbell and Wondaferow were to look like victims (p, 28); before Harper arrived the men were in the house; petitioner went out the back door and reappeared at the front door holding a gun, approached Wondaferow, cursing and demanding money; petitioner hit Wondaferow and Wondaferow gave him money (pp. 21-22,27-28); after the robbery everyone was to meet back at the house (p. 23); Williams shot Harper (pp. 5, 29); Campbell went through Harper's pockets, got $250, and split it with Williams and petitioner (pp. 25-26). |
| March 21, 2001 | Petitioner's counsel writes a letter telling petitioner he has subpoenaed Campbell but did not know whether he would testify. |
| May 1-3, 2001 | Petitioner is tried and found guilty. |
| May 22, 2001 | At a deposition taken by Williams' attorney in preparation for Williams' trial, Campbell testified consistently with the statement he had given the police, including (from ex. X): that petitioner had a .38 (p. 25); that petitioner came from the front yard and demanded money from Wondaferow (p. 29); that Williams shot Harper (p. 32); and that he (Campbell) took money from Harper's pockets and divided it with Williams and petitioner (pp. 38-39). |

**UNDATED**          **Campbell's current statement saying that had no knowledge of petitioner being in the house on the day of the murder other than to smoke some marijuana with Wondaferow. Campbell went on to say that some unidentified tall man, not Williams, killed Harper; that after the shooting petitioner ran out the back door behind Kitchen stating, "If it was a plan I sure did not participate in it;" and that Campbell took money from Harper's pocket and gave some to petitioner.**

**Sept. 10, 2001**      **(First day of Williams' trial) Mention is made of Campbell's statement.**

**Sept. 11, 2001**      **Campbell is in court at Williams' trial, and personally invokes his Fifth Amendment right against self-incrimination, both as to questions concerning his written statement, and as to his knowledge of the events surrounding the murder.**

**Petitioner contends that there was no basis for the state court's finding that Campbell was unavailable to testify because: (1) had trial counsel subpoenaed Campbell, his testimony "would have been admissible" (doc. 16, p. 4), and (2) the fact that Campbell invoked his Fifth Amendment right in Williams' trial has no bearing on whether he would have testified at petitioner's trial (*id.*). While the first argument is factually correct -- that Campbell's testimony would have been admissible -- it says nothing about whether Campbell would have actually testified. The second argument does not clearly and convincingly show that the state court's finding of unavailability was unreasonable. The undisputed fact remains that at the time of petitioner's trial, Campbell was under prosecution for his participation in the robbery. This sufficiently supports the state court's determination. Significantly, regardless of whether petitioner told his trial counsel that he believed Campbell was willing and available to testify, he has not given this court any proof that at the critical time of his trial, Campbell was in fact willing to testify. Petitioner has presented no affidavit from Campbell saying so, and Campbell's unworn statement presented to this and the Rule 3.850 court makes no suggestion that he was. Petitioner has presented only his own bare conclusory allegation.**

**Furthermore, regardless of Campbell's availability, petitioner has failed to show that counsel's failure to call Campbell was outside the wide range of**

professionally competent assistance. *Strickland* and its progeny impose a very high burden on petitioner who claim their counsel's performance was constitutionally deficient:

> "[J]udicial scrutiny of counsel's performance must be highly deferential." Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

*United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003).

Campbell gave two statements soon after the murder, one under oath, in which he directly and positively implicated petitioner. The more recent unsworn statement upon which petitioner relies did not so directly implicate petitioner, but it did not exonerate him either. Assuming counsel was aware of the proposed testimony contained in the latter statement, putting Campbell on the witness stand, with the prosecutor armed with Campbell's statement to the police and ready to pounce, would have been like putting a bomb on the stand and lighting the fuse. The idea that Campbell would have helped petitioner's case is far fetched, to say the least. Thus, given the hand that counsel was dealt, including the two prior statements by Campbell that completely implicated petitioner and the proposed testimony offered in Campbell's subsequent statement (unsworn and of unknown origin) that only partially (and questionably) exonerated petitioner, counsel was clearly well within the wide range of competence expected of effective counsel when

he did not call Campbell. The odds against Campbell helping petitioner's case were extremely high. Petitioner cannot show that *no competent counsel* would have failed to call Campbell. Indeed, it is more likely that no competent counsel would have even considered calling Campbell.[5]

For all of the foregoing reasons, the state court's denial of relief was not based on an unreasonable determination of the facts in light of the evidence in the state court record. 28 U.S.C. § 2254(d)(2). Nor did the state court's ruling result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra.* Petitioner is not entitled to federal habeas relief, and the writ should not issue.

4. <u>Ineffective assistance of counsel - failure to object to prosecutorial misconduct.</u>

Finally, petitioner says that his attorney was deficient for failing to object to that part of the prosecutor's closing argument where the prosecutor referred to petitioner's counsel's probable defense argument as a loophole. This claim was presented to the state court in petitioner's motion for post-conviction relief. The Rule 3.850 court rejected it without a hearing.

A. Clearly Established Federal Law

The clearly established Supreme Court precedent is the *Strickland* standard set forth in Ground 3 above.

B. Federal Review of State Court Decision

In denying relief, the state court, relying on the trial transcript, found that petitioner had misquoted the prosecutor's closing statements. The court determined that the prosecutor's actual statements commented on the law of principals by explaining to the jury the independent act doctrine defense. Although the prosecutor commented on the defense's theory as a loophole for principal acts, it was not to attack or ridicule, but rather for jury understanding (ex. O, p. 72). The court held that the comments by the prosecutor were not improper, and therefore

---

[5]Interestingly, the record shows very clearly that Campbell would not have testified consistent with his later written statement, because at a deposition taken *after petitioner's trial*, he testified consistently with what he told the police, and he later refused to testify.

counsel had no meritorious basis to object or move for mistrial.

The state court's findings are amply supported by the record. During final argument the prosecutor addressed the jury on the applicable legal standards, as the court would explain them. Because petitioner was not proven to be the person who actually killed Mr. Harper, part of the state's theory was that even though petitioner did not shoot Mr. Harper, he would still be guilty as a principal for the acts of all the people involved in the crime. The exception, he pointed out, is where a defendant can show that the actual shooting was an "independent act" on the part of the shooter, one in which the petitioner played no part and never intended, and one which was not a reasonably foreseeable consequence of the common design or unlawful act planned by the parties. In passing, the prosecutor referred to this defense as a "loophole," and it is with this word that petitioner takes exception.

It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935). "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984); Code of Professional Responsibility, DR 7-106(c)(4) (1980); ABA Standards for Criminal Justice: 3-5.8(b) (2nd ed. 1980)).

As the state court reasonably concluded, there was nothing improper about the prosecutor's remarks, and therefore no basis for counsel to object. The prosecutor did not ridicule petitioner's defense. He explained the applicable law to the jury in layman's terms, and in doing so forecast what the defense counsel would likely argue, and discounted it. Referring to the defense as a "loophole" was a common sense explanation in the context of the trial. It was not something that was so egregious as to render the proceeding fundamentally unfair, nor was there a reasonable probability that, but for the prosecutor's offending remarks, the outcome

of petitioner's trial would have been different.  The state court's denial of relief was not based on an unreasonable determination of the facts in light of the evidence in the state court record.  28 U.S.C. § 2254(d)(2).  Nor did the state court's ruling result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Eric J. Thompson* in the Circuit Court of Leon County, Florida, case no. 00-1864, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 7th day of September, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).